

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

JAN -7 2009

OFFICE OF
AIR AND RADIATION

TO: Regional Administrators

SUBJECT: Application of CAA Section 112(g) to Coal- and Oil-Fired Electric Utility Steam Generating Units that Began Actual Construction or Reconstruction Between March 29, 2005 and March 14, 2008

On Feb. 8, 2008, the United States Court of Appeals for the District of Columbia Circuit vacated EPA's Section 112(n) Revision Rule and its Clean Air Mercury Rule (CAMR) (*State of New Jersey* v. *EPA*, No. 05-1097);[1] the Court issued the mandate in this case on March 14, 2008. The Section 112(n) revision rule, which was published on March 29, 2005, removed coal- and oil-fired electric utility steam generating units ("EGUs") from the Section 112(c) list. One effect of the Court's vacatur of that rule is that coal- and oil-fired EGUs, which were a listed source category under Section 112 beginning December 20, 2000, remain on the Section 112(c) list and therefore are subject to Section 112(g), which requires that no person may begin actual construction or reconstruction of a major source of hazardous air pollutants unless the permitting authority determines on a case-by-case basis that new-source MACT requirements will be met.[2]

Questions have been raised about the applicability of Section 112(g) to coal- and oil-fired EGUs that are major sources and that began actual construction or reconstruction[3] between the March 29, 2005 publication of the Section 112(n) revision rule and the March 14, 2008 vacatur of that rule. Although these EGUs may have relied in good faith on rules that EPA issued and that were subsequently vacated, the Agency believes that these EGUs are legally obligated to come into compliance with the requirements of Section 112(g). EPA has reviewed permit information for the facilities of which we were aware that began actual construction in this time interval. Based on the information we have reviewed to date, EPA believes that the suite of controls in place at these facilities may be sufficient to support a determination under section 112(g) that emissions will be controlled to a level no less stringent than MACT for new sources.

---

[1] EPA notes that petitions for *certiorari* of the D.C. Circuit's 112(n) Revision Rule and CAMR decision currently are pending before the United States Supreme Court. In the event the Supreme Court grants *certiorari* and reverses the D.C. Circuit's decision, EPA would expect to revisit the issue of CAA 112(g) applicability to the EGUs addressed herein, in keeping with the decision issued by the Court.
[2] See 40 C.F.R. Section 63.43(d). EPA has not issued final regulations implementing the requirements of 112(g) applicable to modifications. See 61 Fed. Reg. 68384, 86 (Dec. 27, 1996).
[3] The phrase "begin actual construction or reconstruction" has the same meaning as the phrase "begin actual construction" in 40 CFR 51 and 52 (the NSR and PSD programs), i.e., initiation of physical onsite construction activities as set forth in those programs. (See 61 Fed. Reg. 68634, 68390, Dec. 27, 1996).



EXHIBIT E

According to 40 C.F.R. 63.43(d), however, Section 112(g) determinations are to be made by the permitting authority on a case-by-case basis based on available information as defined in 40 CFR 63.41. We therefore request that the appropriate State or local permitting authority commence a process under Section 112(g) to make a new-source MACT determination in each of these cases.

EPA recognizes that the application of MACT standards to a project that has already begun construction may present challenges. Affected EGUs may argue that certain options, which might otherwise have been considered MACT requirements prior to construction, have effectively been foreclosed by the construction that has already taken place. Section 112(g) proceedings ordinarily are concluded before the commencement of any construction activity, so it is reasonable for the permitting authority – under these unique and compelling circumstances, and within the bounds of its discretion under Clean Air Act Section 112(g) and EPA's section 112(g) regulations[4] – to give consideration to the effect of prior construction, undertaken in reasonable reliance on now-vacated rules, in making the case-by-case determination of applicable MACT requirements. The Agency cautions, however, that permitting authorities should not consider any MACT options to have been foreclosed simply by the prior issuance of permits, by the progress of administrative processes, nor by obligation of contract. EPA believes that, in considering the effect of prior construction on the applicable MACT requirements, permitting authorities should limit such consideration to actual physical construction only. Moreover, such consideration should be limited to construction activities that took place prior to February 8, 2008, when the DC Circuit Court issued its opinion.[5]

EPA urges permitting authorities to undertake Section 112(g) reviews without delay, and stands ready to offer technical assistance in expediting these procedures.

Sincerely,

Robert J. Meyers
Principal Deputy Assistant Administrator

---

[4] See 40 C.F.R. 63.43(d)(1) (New source MACT shall not be less stringent than the emission control which is achieved in practice by the best controlled similar source, as determined by the permitting authority.).
[5] One court noted that "As early as June 2005 [defendant] undoubtedly knew that the delisting of EUGs [sic] was being challenged..." (*Southern Alliance for Clean Energy, et al, v. Duke Energy Carolinas, LLC,* Civil No. 1:08CV318 (W.D.N.C.). EPA does not attach any significance to this date, and cautions that parties may not assume that any regulation is less than fully effective merely because it is being challenged. In the Agency's view, any reasonable reliance on the prior rules ended neither earlier nor later than February 8, 2008.