IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:09-CV-02974-DME-BNB

WILDEARTH GUARDIANS, a New Mexico non-profit corporation, CLIFF WARREN, an individual and resident of the City of Lamar, CHARLES WARREN, an individual and resident of the City of Lamar, SHRILEY WARREN, an individual and resident of the City of Lamar, and VERDELL HOWARD, an individual and resident of the City of Lamar,

       Plaintiffs,

v.

LAMAR UTILITIES BOARD d/b/a LAMAR LIGHT AND POWER, ARKANSAS RIVER POWER AUTHORITY, THE CITY OF LAMAR, a Colorado Home Rule Municipality, ROGER STANGER, in his official capacity as Mayor of the City of Lamar, KIRK CRESPIN, in his official capacity as city councilman, Ward I for the City of Lamar, SKIP RUEDEMAN, in his official capacity as city councilman, Ward II for the City of Lamar, BEVERLY HAGGARD, in her official capacity as city councilman, Ward III for the City of Lamar, JIM LARRICK, in his official capacity as city councilman, Ward I for the City of Lamar, P.J. WILSON, in his official capacity as city councilman, Ward II for the City of Lamar, KEITH NIDEY, in his official capacity as city councilman, Ward III for the City of Lamar, ROBERR G. SCHEMAHORN, JR., in his official capacity as Chairman of the Lamar Utilities Board, WILLIAM WOOTEN, in his official capacity as Vice-Chairman of the Lamar Utilities Board, DONALD STEERMAN, in his official capacity as a member of the Lamar Utilities Board, DAVID ANDERSON, in his official capacity as a member of the Lamar Utilities Board, and JOHN R. MUNEZ, in his official capacity as a member of the Lamar Utilities Board,

       Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' (collectively, "WEG") Complaint, and Defendants' Motion to Dismiss WEG's Amended Complaint. (Doc. 1 [Complaint]; Doc. 9 [Motion to Dismiss]; Doc. 27 [Plaintiffs' Response]; Doc. 42 [Defendants' Reply]; Doc. 63 [First Amended Complaint]; Doc. 69

[Motion to Dismiss Amended Complaint]; Doc. 73 [WEG's Response]; Doc. 74 [Defendants' Reply].) After considering the motions and all briefing, the Court hereby GRANTS in part and DENIES in part Defendants' motions.

## I. Background

Over the last decade, the Environmental Protection Agency ("EPA") has twice changed its position on how coal-fired power plants such as the one at issue here are regulated. This has created problems for the industry as the governing regulatory requirements have changed at the same time plants have actively been designed, built, and operated. That difficulty notwithstanding, it is incumbent on operators such as the Defendants here to ensure that their facilities comport with federal law. The Court will first lay out that law, then briefly sketch the factual contours of WEG's complaint.

### A. Clean Air Act Section 112(g), the Delisting Rule and CAMR, and New Jersey v. EPA

Section 112 of the Clean Air Act ("CAA"), 42 U.S.C. § 7412,[1] regulates the emission of hazardous air pollutants ("HAPs") into the atmosphere. In 1990, Congress amended the section to list more than one hundred specific HAPs, including mercury, that the EPA would be required to regulate. New Jersey v. EPA, 517 F.3d 574, 578 (D.C. Cir. 2008). These amendments also required the EPA to conduct a study to determine whether it was "appropriate and necessary" for electric utility steam-generating units ("EGUs") to be regulated as HAP sources under § 112. CAA § 112(n)(1)(A). This study, which was completed in 1998, found "a plausible link"

---

[1] This Order will refer to throughout statutory provisions by their Clean Air Act section numbers (i.e. "section 112"), rather than from the U.S. Code codification (i.e. "42 U.S.C. § 7412").

2

between human-generated sources of mercury such as coal- and oil-fired EGUs and methylmercury in fish, which is a significant human health hazard. New Jersey, 517 F.3d at 579.

Based on this report, the EPA determined in 2000 that coal- and oil-fired EGUs would be regulated under § 112(g), which requires that all new and reconstructed EGUs meet the "maximum achievable control technology emission limitation" (or "MACT") standard. CAA § 112(g)(2)(A). The MACT requirement only applies to EGUs that are a "major source" of HAPs. CAA § 112(g). An EGU is a major source if it "emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants." Id. § 112(a)(1).

In 2005, however, the EPA changed course and determined that it would "de-list" EGUs from § 112 regulation. Instead, the EPA elected to regulate EGUs under § 111 of the CAA. New Jersey, 517 F.3d at 580. It did this by issuing two rules: the Delisting Rule, which removed EGUs from § 112 coverage, and the Clean Air Mercury Rule ("CAMR"), which set nationwide mercury emission limits and established a voluntary cap-and-trade system for new and reconstructed EGUs. Id. at 577. These rules went into effect in May of 2005. Id. at 580. A number of states filed suit against the EPA in response, arguing that § 112(c)(9) of the CAA sets forth specific procedures for delisting HAP sources, and that the EPA did not follow those procedures. Id. at 581. The D.C. Circuit agreed, and vacated both the Delisting Rule and the CAMR. Id. at 583-84. Thus, as of issuance of the mandate by the D.C. Circuit, in March of 2008, coal-fired

3

EGUs are once again required to obtain a MACT determination in order to operate lawfully.

In January of 2009, the EPA Principal Deputy Assistant Administrator sent a letter to all EPA Regional Administrators addressing the question of "coal- and oil-fired EGUs that are major sources that began actual construction or reconstruction between the March 29, 2005 publication of [the Delisting Rule and CAMR] and the March 14, 2008 vacatur of that rule." (Doc. 1 [Complaint] Attach.) In the EPA's view, "these EGUs are legally obligated to come into compliance with the requirements of Section 112(g)." (Id.) The letter further urged that, in the process of evaluating the MACT status of these projects, "permitting authorities should not consider any MACT options to have been foreclosed simply by the prior issuance of permits, by the progress of administrative processes, nor by obligation of contract." (Id.)

### B. The Lamar Repowering Project

Defendants are various officials of the City of Lamar, Colorado, the Lamar Utilities Board, and the Arkansas River Power Authority. In 2004, the Defendants resolved to upgrade substantially Lamar's existing power plant and change it from a natural gas-fired plant into a coal-fired one, thus increasing its generating capacity. This plan is known as the "Lamar Repowering Project," and it involves substantial upgrades and changes to the existing plant. In November 2004, the Lamar Utilities Board and the Arkansas River Power Authority entered into a Joint Operating Agreement ("JOA") for the development and maintenance of the Project. In the JOA, the Utilities Board agreed to "dedicate" certain portions of the existing natural-gas plant and certain real property

4

to the Project, in return for the benefits to the City of Lamar that would flow from the plant upgrade. (JOA [Doc.69-6] § 6.2 ("In order to achieve the economic and reliability benefits contemplated through development of the Project, Lamar will provide certain Dedicated Facilities to the Project at no cost to the Authority.").) The JOA contemplates the agreement lasting as long as the power plant does, which is projected to be forty years. (Id. § 5.1 ("The Parties anticipate that the useful life of the Repowering Project will be approximately 40 years.").)

On February 3, 2006, the Colorado Department of Public Health and Environment Air Pollution Control Division issued a permit authorizing the Project. Because at that time the Delisting Rule and CAMR were in effect, the Defendants did not have to get a MACT determination in order to obtain a permit or begin construction, and they did not do so.[2]

---

[2] The parties hotly dispute whether the Project qualifies as a "major source" under the CAA, and thus whether it is subject to the MACT requirement even under New Jersey. Whether the Project emits or will emit a sufficient quantity of HAPs to be a major source is a fact question that cannot be resolved on a motion to dismiss. Further, the Court has been unable to find—nor have the parties provided—any authority establishing that major source status is a predicate to this Court's jurisdiction, rather than an element of WEG's CAA claim. Cf. Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1245-46 (2010) (where requirement is not in jurisdiction-granting section of statute and does not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," courts should refrain from interpreting requirement as jurisdictional) (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 515 (2006)). As a simple element of the claim, rather than a jurisdictional fact, the Court may accept as true under Fed. R. Civ. P. 12(b)(6) WEG's allegation in its complaint (Doc. 1 ¶ 41 [Complaint]; Doc. 63 ¶ 68 [Amended Complaint]) that the Project is a major source. The Court will, therefore, defer consideration of the factual question until a later stage of the litigation.

Additionally, the Defendants have argued that they are, in conjunction with the Air Pollution Control Division of the Colorado Department of Public Health & Environment, in the process of evaluating obtaining a MACT determination. (Doc. 9 [Utilities' Motion

### C. The Lamar Home Rule Charter

Defendant Lamar Utilities Board is a political entity created by the Home Rule Charter of the City of Lamar. (Charter [Doc. 69-4] § 7-1.) The Board is "responsible for the development, production, purchase, and distribution of all electricity" in Lamar. (Id.) Under the Charter, the Board is empowered to build and operate facilities for the generation and distribution of electricity, and can "contract with any public corporation or any individual . . . [w]ith the approval of the [City] Council, for the joint acquisition of real property and franchises and the joint financing, construction, and operation of plants, transmission lines, and other facilities." (Id. § 7-5(c)(2).) However, the Home Rule Charter contains the following limitation on the City's power to dispose of public utilities:

> The City shall have no authority to cease to operate, sell, lease, abandon, or in any other way dispose of any public utility owned by it without the approval of a majority of the votes cast by the registered voters of the City, at a general election or a special purpose election held for the purpose.

(Id. § 7-6(a).) The City of Lamar did not hold any public vote prior to adoption of the JOA and commencement of the Project.

---

to Dismiss Complaint] at 7-9.) The Defendants claim that evidence of this consultation is contained in the administrative record, judicial notice of which the Court has taken pursuant to the Defendants' unopposed motion to do so. (Doc. 10.) Whether the Defendants have taken steps to comply with CAA § 112(g) is a factual question that is beyond the scope of this motion, and will be better addressed in a motion for summary judgment or at trial. See Weise v. Casper, 507 F.3d 1260, 1267 (10th Cir. 2007) (noting that consideration of an affirmative defense in a 12(b)(6) motion necessitates treating the motion as one for summary judgment under Rule 56) (citing 5C Charles Alan Wright & Arthur P. Miller, Federal Practice & Procedure § 1366). Therefore, the Court will take no notice of this information and will not consider it in ruling on the instant motions.

## II. Legal Standard

The Defendants have moved to dismiss WEG's complaint under Federal Rules of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief may be granted. Where subject-matter jurisdiction arises from the same federal statute that provides the claim for relief, this Court is required to evaluate a Rule 12(b)(1) motion under the standard for Rule 12(b)(6). Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). Here, WEG has filed suit under the citizen suit provision of the CAA (§ 304(a)), and thus that act provides both jurisdiction and the claim for relief. Applying Rule 12(b)(6), then, in order to avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (applying plausibility standard to all Rule 12(b)(6) motions).

Ordinarily, in considering a motion under Rule 12(b)(6), the Court may not take into account material beyond the pleadings without transforming the motion into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). If the Court were to so transform the motion, it would be required to give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Id. As this case is likely to proceed of its own momentum to the summary judgment stage and discovery is currently ongoing, the Court will not treat this motion as one for summary judgment. Nevertheless, under Tenth Circuit precedent, the Court may properly consider materials beyond the pleadings in ruling on a 12(b)(6) motion where those materials "are referred

7

to in the . . . Complaint, are central to the plaintiffs' claims, and their authenticity has not been disputed by any of the parties." Moss v. Kopp, 559 F.3d 1155, 1159 n.2 (10th Cir. 2009) (citing Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007)).

In addressing the Defendants' motions, therefore, the Court will consider the 2009 letter from the EPA home office to the regional administrators, referenced in and attached to WEG's Complaint; the Lamar Home Rule Charter, referenced in WEG's Amended Complaint and attached to the Defendants' motion to dismiss that Amended Complaint; and the Joint Operating Agreement, which is similarly referenced and attached. The Court will not consider any other factual material in ruling on whether WEG has stated a claim, and the Court will not treat this motion as one for summary judgment.[3]

## III. Discussion

The Defendants advance three arguments for why the Court should dismiss this case. The Court will address each in turn.

### A. Collateral Attack

The Defendants first argue that this Court does not have jurisdiction over what, in the Defendants' view, is essentially an attempt by WEG to attack collaterally the state of Colorado's 2006 decision to issue a permit for the Project. This argument fails, however, because WEG is not challenging Colorado's decision to issue a permit for the Project in 2006, and does not allege that that permit was improperly granted at that

---

[3] WEG has filed a motion (Doc. 25) asking the Court to take judicial notice of additional factual material, and the Defendants have opposed that motion (Doc. 39). Because the Court can fully address the Defendants' motions to dismiss without resort to the materials proffered by WEG, the Court will DENY WEG's motion. (Doc. 25.)

time.  Rather, WEG alleges simply that the Defendants require a MACT determination in order to continue constructing or operating the Project.  Section 112 provides that "no person may construct or reconstruct any major sources of hazardous air pollutants, unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation under this section for new sources will be met."  CAA § 112(g)(2)(B).  This requirement is separate from any state permitting process, and thus WEG's allegation that the Defendants are <u>currently</u> in violation of § 112(g) is distinct from the question of the validity of the Defendants' state-issued permit <u>when it was issued</u> in 2006.  Therefore, this suit is not a collateral attack on the permit.

### B. <u>Burford</u> Abstention

Second, the Defendants argue that the Court should dismiss this case under the abstention doctrine of <u>Burford v. Sun Oil</u>, 319 U.S. 315 (1943).  Under this doctrine, "[f]ederal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with the principles of comity and federalism."  <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 723 (1996).  "<u>Burford</u> abstention arises when a federal district court faces issues that involve complicated state regulatory schemes."  <u>Lehman v. City of Louisville</u>, 967 F.2d 1474, 1478 (10th Cir. 1992).  Courts should abstain under <u>Burford</u>:

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) (citations and quotations omitted) ["NOPSI"].

As in NOPSI, "[t]he present case does not involve a state-law claim, nor even an assertion that the federal claims are in any way entangled in a skein of state-law that must be untangled before the federal case can proceed." Id. Moreover, WEG's claim is for a violation of federal law, i.e. the Clean Air Act, the application of which—though in some part administered by state agencies—is an entirely federal question. Cf. ANR Pipeline Co. v. Corp. Comm'n of State of Okla., 860 F.2d 1571, 1579 (10th Cir. 1988) ("In Burford, the federal court was asked to apply and interpret Texas law. Here, we are applying the law arising under the United States Constitution and Congressional enactments."). As noted above, WEG does not challenge the state regulatory process whereby the Defendants' permit was granted. Moreover, while the Defendants have argued that they are engaged in the process of exploring a MACT determination from the state of Colorado, they have not explained why such an ongoing process would present the complex issues of state law necessary to render Burford abstention appropriate.[4]

---

[4] Contrary to the Utilities' assertion, Ellis v. Gallatin Steel Co., 390 F.3d 461 (6th Cir. 2004), while not binding on this Court, is also inapposite because that case involved a challenge to a state's decision that the facility at issue did not require a particular permit. As the Ellis court noted, "the question in this case is not whether citizens may sue companies that fail to obtain a [Prevention of Significant Deterioration] permit; they may and Burford abstention rarely will present an obstacle to those claims." Id. at 481. Further, as noted above, on this motion to dismiss, the Court may not consider the evidence proffered by the Defendants of their discussions with the state of Colorado. That factual matter will be better addressed through a motion for summary judgment or at trial.

The Court is aware that, in a similar case pending in this district, Judge Miller elected to abstain from further review of a MACT determination under Burford. Wildearth Guardians v. Pub. Serv. Co. of Colo., 698 F. Supp. 2d 1259, 1264-65 (D. Colo. 2010). In that case, however, Xcel Energy, in the wake of New Jersey, had applied for and been granted a new permit by the state of Colorado that included a MACT determination. Id. at 1264. WEG "participated in the permitting process and procedures that exist for it to obtain review; including, if appropriate, judicial relief through the state system." Id. Thus, because the question of a MACT determination in that case "had essentially been rendered moot" by Xcel's obtaining a MACT determination, Judge Miller observed that, under Burford, he should not engage in review of the newly-granted permit. Here, however, there is no state permit including a MACT determination, but merely an assertion that discussions regarding a MACT determination are ongoing between the Defendants and the state. At least upon the allegations of the Amended Complaint before this Court, the Court concludes that Burford abstention is not appropriate.

### C. Application of § 112(g) to the Project

Finally, the Defendants argue that § 112(g) cannot be applied to the Project as a matter of law, for two reasons. First, they argue that the provision is a preconstruction requirement, and thus does not apply to a project where construction has been ongoing for three years and is nearly complete. Second, they argue that the New Jersey decision cannot be applied retroactively to the Project.

## 1. Section 112 as a Preconstruction Requirement

The Defendants argue that § 112(g) does nothing but require utility companies to obtain a MACT determination <u>prior to beginning construction</u>, and since the Project here is already underway, § 112(g) does not apply as a matter of law. The Court cannot accept this interpretation of § 112(g). The statute reads, in pertinent part:

> [N]o person may construct or reconstruct any major source of hazardous air pollutants . . ., unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation under this section for new sources will be met. Such determination shall be made on a case-by-case basis where no applicable emission limitations have been established by the Administrator.

CAA § 112(g)(2)(B). While the plain text of the statute requires an operator to obtain a MACT determination before "construct[ing] or reconstruct[ing]" a major source, nothing in the text indicates that the operator is relieved of the responsibility of complying with the statute after construction begins. "[C]onstruct or reconstruct" are active verbs that have force after the permit is issued and after construction or reconstruction has begun. Therefore, the Court will not dismiss WEG's complaint on this basis.

## 2. Retroactivity of <u>New Jersey</u>

Finally, the Defendants assert that WEG cannot hold them liable for violating the MACT requirement while it was not in force, because such an action would impermissibly apply the <u>New Jersey</u> court's decision retroactively. As a threshold matter, by its very nature this argument is of limited scope; it can only apply to behavior during the period between the promulgation of the Delisting Rule and the CAMR and the D.C. Circuit's issuance of the <u>New Jersey</u> opinion. Once the <u>New Jersey</u> decision was issued and the Defendants were put on notice that § 112(g) applied to EGUs, assessing

penalties for a failure to seek a MACT determination after that point would not be to apply the case retroactively. Here, WEG seeks injunctive relief and civil penalties covering the time period both before and after New Jersey, and so even if the Defendants' retroactivity argument is correct, it can only be applied to WEG's claims for civil penalties covering the period between when construction of the Project began and when the D.C. Circuit issued the New Jersey decision.

As WEG points out, even if the Defendants' obligation to comply with § 112(g) was not always in force, it could have arisen, for example, (1) when the D.C. Circuit issued its mandate vacating the Delisting Rule and CAMR in March 2008; (2) when the EPA sent its January 2009 memo to its regional administrators opining that projects begun while the Delisting Rule was in effect were required to obtain a MACT determination in light of New Jersey, or (3) in July 2009, when the EPA informed the Defendants via letter that they were obliged to obtain a MACT determination. All or any of these dates might apply without raising retroactivity concerns.

Thus, at most the Defendants' motion to dismiss on the basis of retroactivity goes only to the proper calculation of damages, and not to the sustainability at this stage of the pleadings of the underlying claim. Thus, at this time the Court will deny the Defendants' motion to dismiss based on retroactivity, without prejudice to renewing various aspects of this argument in the context of damage liability.

**D. Supplemental Jurisdiction Over State-Law Claims**

In its Amended Complaint, WEG has raised three claims premised on Colorado Rule of Civil Procedure 106(a)(2), which provides a cause of action for parties seeking

to compel public officials to perform acts clearly required by law. The law that WEG claims the Defendants have violated is the provision of the Lamar Home Rule Charter forbidding the City of Lamar from selling or leasing its public utility without a vote of the electorate on the issue. (Am. Compl. at ¶¶ 71-90.) WEG asserts that these three state-law claims fall within this Court's supplemental jurisdiction, under 28 U.S.C. § 1367. The Defendants disagree, and move to dismiss the state-law claims under Rule 12(b)(1).

Under § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "A claim is part of the same case or controversy if it derives from a common nucleus of operative fact." Price v. Wolford, 608 F.3d 698, 702-03 (10th Cir. 2010) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997) and United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)) (quotation marks and alterations omitted). "In deciding whether to exercise jurisdiction, the district court is to consider 'judicial economy, convenience, fairness, and comity.'" Nielander v. Bd. of County Comm'rs of County of Republic, Kan., 582 F.3d 1155, 1172 (10th Cir. 2009) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

As determined above, the Court has original jurisdiction over WEG's CAA claim under 28 U.S.C. § 1331, federal question jurisdiction. Therefore, if WEG's state-law claims derive from the same nucleus of operative fact as its CAA claim, the Court may

14

take supplemental jurisdiction over the state-law claims. The Court holds, however, that WEG's federal- and state-law claims do not arise from a common nucleus of operative fact. While the two claims are, beyond question, related, in that they both involve the same Project, the Court sees almost no commonality between them with respect to how they will be presented at trial. At its core, WEG's CAA claim raises technical, scientific issues: how much of the various HAPs will the Project emit, what pollution control technology does the Project use, and what better technologies might be available? The state-law claims, on the other hand, turn almost entirely on an interpretation of the Lamar Home Rule Charter in light of the standards of Colorado Rule of Civil Procedure 106(a).[5] Other than the bare fact that the City of Lamar has entered into an agreement to rebuild its power plant, the two claims share no factual commonalities whatsoever. Thus, in the Court's view, WEG's claims are not "such that [WEG] would ordinarily be expected to try them all in one judicial proceeding," Gibbs, 383 U.S. at 725, and so they do not satisfy the requirement of § 1367(a). The Court will, in its discretion, decline jurisdiction over claims two, three, and four of WEG's Amended Complaint.[6]

It is therefore **ORDERED** that:

- Defendants' Motion to Dismiss WEG's federal claim under the Clean Air Act (Doc. 9) is DENIED;

---

[5] The Court notes that the Lamar Home Rule Charter provides "exclusive original jurisdiction of all causes arising under the Charter and ordinances of the City of Lamar" to the Lamar Municipal Court. (Home Rule Charter § 10-4.)

[6] Because the Court is dismissing WEG's state-law claims as outside the Court's supplemental jurisdiction, the Court need not rule on the Defendants' motion to dismiss those claims for failure to state a claim under Rule 12(b)(6).

- WEG's Motion for Order to Take Judicial Notice (Doc. 25) is DENIED; and

- Defendants' Motion to Dismiss the state-law claims in WEG's Amended Complaint (Doc.69) is GRANTED, and WEG's Second, Third, and Fourth Causes of Action in its Amended Complaint are dismissed without prejudice.

Dated this __13th__ day of _____August_____, 2010.

BY THE COURT:

*s/ David M. Ebel*

U. S. CIRCUIT COURT JUDGE