# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02974-DME-BNB

WILDEARTH GUARDIANS, et al.,

       Plaintiffs,

v.

LAMAR UTILITIES BOARD d/b/a Lamar Light and Power, et al.,

       Defendant.

## ORDER VACATING TRIAL AND SETTING BRIEFING SCHEDULE

On January 12, 2011, a summary judgment hearing was held in this matter.  The Court was unable to resolve some outstanding issues.  Therefore, the trial, currently set to commence on March 21, 2011, will be continued in order for the parties to submit briefs on these issues.

**IT IS HEREBY ORDERED:**

1. The Final Trial Preparation Conference currently set on March 14, 2011, is VACATED.
2. The trial dates currently set to commence on March 21, 2011, are VACATED.
3. The deadlines set forth in this Court's Order Setting Trial Dates and Deadlines (Doc. 98) are WITHDRAWN.
4. The parties shall submit briefs, not to exceed 35 pages, simultaneously addressing each of the following issues by February 11, 2011.

### Major Source Status

    a. Should the Lamar Repowering Project be deemed to be a new source or a modification of an existing source?  What is the significance of this distinction?

b. Factually, when did regular power production begin at the Lamar Repowering Project? Is "construction" or "reconstruction" on the Project now concluded? Does the concept of substantial completion apply? What is the impact of these facts on this suit and on the application of § 112 of the Clean Air Act?

c. Should, or must, this Court defer to the Air Pollution Control Division of the Colorado Department of Public Health ("APCD") for the determination of whether the Lamar Repowering Project is a major source? What impact on this litigation would such a finding by the APCD have?

d. What is a realistic time frame for the APCD to determine whether an EGU is a major source?

e. A major source is defined as an EGU with the potential to emit more than 10 tons of hazardous air pollutants per year. What is meant by potential to emit? Is it strictly a physical concept, or could potential be limited either by the terms of the permit, or by decisions of the operating company regarding the quality of coal an EGU will burn, or the way in which the EGU will otherwise operate?

f. What is the critical date for determining potential to emit more than 10 tons annually of hazardous air pollutants? Is that immutable or can it be amended? If it can be amended, then how?

g. What are the procedures for modifying a permit to reduce authorized HCl emissions to below 10 tons per year? What will the impact be on this suit if such a modification occurs?

h. What is the impact of the EPA's "once in, always in" policy on the issues of this case?

i. What potential HCl representations were made by the Lamar Repowering Project after the New Jersey v. EPA, 517 F.3d 574 (D.C. Cir. 2008), opinion? What is the legal effect of representations, made after the permit was issued and after reconstruction was completed, that the Lamar Repowering Project actually emits lower levels of HCl than originally estimated?

**Potential Violation of § 112(g)**

j. Should New Jersey be applied retroactively or prospectively?

k. How should courts measure a reasonable amount of time for major sources to come into compliance with § 112(g)'s requirements after the D.C. Circuit issued its mandate in New Jersey? Should the APCD's schedule be accommodated? Or should compliance be instantaneous?

l. When, and during what periods, does Wildearth claim the Lamar Repowering Project was in violation of § 112?

**Potential Damages**

m. What should the Lamar Repowering Project have done that it did not do? How did its failure to take such action harm Wildearth?

n. Can Wildearth have a damage claim if the Lamar Repowering Project is not and never has been a major source? What are Wildearth's damages? Should equities have a role in assessing damages? If so, how do the equities cut in this case?

o. Is Wildearth barred by latches from equitable relief because it did not file a motion for injunctive relief during construction?

p. Who has responsibility for determining MACT standards? If it is the duty of the APCD, should this case await that determination? If the Lamar Repowering Project

is found in compliance with MACT by the APCD, will that impact damages in this case?

### Abstention

q. Even if <u>Burford v. Sun Oil</u>, 319 U.S. 315 (1943), abstention is inappropriate, is there some other doctrine of abstention, deference, or ripeness that counsels against proceeding with this matter until the major source determination is made by the APCD? Once the APCD addresses that issue, what is the proper procedure for judicial review of such a determination? What is the impact of the APCD determination on the same issue raised in this case?

r. Even if action in this case does not interfere with state substantive laws, could <u>Burford</u> be invoked to prevent this Court from interfering with state procedural law?

### APCD and EPA Involvement

s. Should, or must, either the APCD or the EPA be brought in as a party or invited to submit an amicus response to these questions?

t. May the Lamar Repowering Project rely on the APCD's or the EPA's interpretation and application of § 112?

u. What weight, effect, and deference does should be given to the letter from the EPA to Regional Administrators, dated January 7, 2009, detailing how EGUs should proceed under § 112(g) in light of the changing rules? Has the EPA since promulgated any rules dealing with this issue?

### Judicial Notice

v. Do the parties have any further views on Wildearth's Motion to Take Judicial Notice (Doc. 78)?

5. The parties shall submit reply briefs, not to exceed 15 pages, by March 4, 2011.

6. Thereafter, the parties are to call this Court's chambers to reschedule a trial date.

Dated this ⎯⎯13th⎯⎯ day of ⎯⎯⎯⎯January⎯⎯⎯⎯, 2011.

                                BY THE COURT:

                                *s/ David M. Ebel*

                                David M. Ebel
                                United States Circuit Judge