**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action Nos. 1:09-CV-02974-DME-BNB and 1:11-cv-00742-MSK-MJW

WILDEARTH GUARDIANS,

Plaintiff,

v.

LAMAR UTILITIES BOARD d/b/a LAMAR LIGHT AND POWER, and ARKANSAS RIVER POWER AUTHORITY,

Defendants.

---

# CONSENT DECREE

---

WHEREAS, Defendant Arkansas River Power Authority is a joint action agency of the state of Colorado, created pursuant to Colo. Rev. Stat. § 29-1-204, which owns the Lamar Repowering Project, a 44 megawatt coal-fired electric generating unit (the "LRP") located in Lamar, Colorado;

WHEREAS, Defendant Lamar Utilities Board d/b/a Lamar Light and Power is the municipally-owned electric utility for the City of Lamar, Colorado, and operates the LRP;

WHEREAS, on or about September 10, 2009 WildEarth Guardians ("Plaintiff") provided written notice ("Lamar I Notice") to Lamar Utilities Board d/b/a Lamar Light and Power and the Arkansas River Power Authority (collectively, "Defendants") of Plaintiff's intent to sue to enforce the Clean Air Act, asserting violations of Section 112(g) of the Clean Air Act and its implementing regulations relating to the construction of the LRP;

WHEREAS, a Complaint based upon the Lamar I Notice was filed in the U.S. District Court for the District of Colorado on December 21, 2009 (Civil Action No. 09-CV-02974-DME-BNB) ("Lamar I"), pursuant to Section 304 of the Clean Air Act, seeking declaratory and injunctive relief, the imposition of penalties, and Plaintiff's attorneys' fees and costs of litigation;

WHEREAS, on October 27, 2010 and on January 10, 2011, Plaintiff submitted written notice ("Lamar II Notice") to the Defendants of Plaintiff's intent to sue to enforce the Clean Air Act, asserting multiple violations of emission limitations set forth in the October 13, 2009 construction permit issued by the Air Pollution Control Division of the Colorado Department of Public Health and Environment (the "State") for the LRP;

WHEREAS, a Complaint based upon the Lamar II Notice was filed in the U.S. District Court for the District of Colorado on March 23, 2011 (Civil Action No. 1:11-cv-00742-MSK-MJW) ("Lamar II), pursuant to Section 304 of the Clean Air Act, seeking declaratory and injunctive relief, the imposition of penalties, and Plaintiff's attorneys' fees and costs of litigation;

WHEREAS, on July 11, 2012, the Court granted Plaintiff's motion for leave to file a Supplemental Complaint asserting claims for additional alleged violations of the Clean Air Act;

WHEREAS, on September 29, 2010, April 29, 2011 and December 7, 2012, the Defendants entered into compliance orders on consent with the State, (the "Compliance Orders"), which among other things set forth certain conditions regarding testing of the LRP;

WHEREAS, following a mediation on May 23, 2013, Plaintiff and Defendants have entered into an agreement to resolve the Lamar I and II actions (the "Actions") expeditiously, without further litigation expense, in a manner that will safeguard air quality and public health,

and that will provide reliable and affordable energy to customers within Defendants' service area;

WHEREAS, Plaintiff and Defendants (the "Parties") have negotiated this Consent Decree ("Decree") in good faith and at arm's length and agree that the settlement of the Actions through this Consent Decree without further litigation avoids substantial risks and costs of a protracted proceeding, is in the public interest, provides certainty for utility customers and for clean air, and is a fair, reasonable, and appropriate means of resolving all claims in the Actions;

WHEREAS, Defendants have taken steps during the course of the Action to progress toward achieving compliance with applicable Clean Air Act requirements at the LRP, and will continue to do so during the term of this Consent Decree as set forth below;

WHEREAS, the Parties anticipate that this Decree will achieve valuable environmental and community benefits by improving air quality and reducing demand for energy in the communities serviced by and nearest to the LRP;

WHEREAS, the Parties consent to the entry of this Decree without further trial, argument, or appeal;

WHEREAS, pursuant to Section 304 of the Clean Air Act, 42 U.S.C. § 7604(c)(3), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the statutorily-mandated forty-five (45) day review period;

NOW, THEREFORE, with the consent of the Parties and without any admission or adjudication of the violations alleged in the Complaint or the Notice Letters, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1. This Court has jurisdiction over the Parties and the subject matter of the Action pursuant to Section 304 of the Clean Air Act, 42 U.S.C. § 7604, the citizen suit provision of the Act, and pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this judicial district under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. § 1391.

3. Upon entry of this Decree by the Court, the provisions of this Decree shall apply to and be binding upon the Parties, as well as the Parties' officers, employees, agents, successors and assigns.

**Testing and Operational Limitations**

4. Immediately upon lodging of the Decree with the Court:

a. The LRP will not be operated, except for limited testing purposes consistent with the Compliance Orders between Defendants and the State, until February 1, 2022.

b. Testing shall consist of one period, not to exceed 120 days, and shall be completed before July 1, 2014. Defendants will provide notice of the testing to Plaintiff within 14 days of commencing testing. Defendants will also provide notice to residents adjacent to the Project by publication in a local paper and letters to residents living within a five-block radius of the Project, within 14 days of commencing testing. If after July 1, 2014, additional testing is considered necessary by ARPA or the State, any additional testing must also not exceed one 120-day period and must be completed by June 1, 2015. Notice shall again be given to Plaintiff and residents adjacent to the Project as described above. No testing of the boiler at the LRP will take place after June 1, 2015.

c. The LRP will remain in cold standby until February 1, 2022. For purposes of this Decree, "cold standby" means the Defendants will not accept or handle coal, burn coal, or otherwise operate the LRP in any manner except for the limited testing described above.

d. The Defendant Arkansas River Power Authority agrees it will either obtain a waiver of any requirement to operate the plant from its long-term power supplier, or will not agree to any operation of the plant requested by Twin Eagle Resource Management pursuant to its discretion as set forth in Appendix C of the existing power supply contract.

**Supplemental Environmental Project**

5. The Defendants will pay $125,000 toward a supplemental environmental project ("SEP").

6. Within 60 days of the Date of Entry of this Decree, Defendants shall submit a plan for a proposed SEP to Plaintiff and to this Court for review and approval. Such approval shall not be unreasonably withheld. The SEP may include one or more of the following types of projects to be implemented in Lamar and/or other communities within the area in which ARPA provides wholesale electric service, which projects are intended to improve air quality, enhance energy efficiency, or develop clean energy:

a. A project to weatherize residential buildings, with an emphasis on serving low-income families and/or housing facilities, schools, or child-care facilities;

b. A project to fund energy efficiency improvements in residential buildings, with an emphasis on serving low-income families and/or housing facilities, schools, or child-care facilities;

c. A project to fund the installation of rooftop solar panels on schools, low-income housing facilities (including senior centers), or daycare facilities.

7. Any SEP project or projects shall achieve its intended objective with as little of the funds possible funding overhead and/or administration of any SEP project.

8. Defendants shall retain a third party or parties, including any individual, non-profit corporation, or other entity, that is not affiliated with any Party to administrator and implement the SEP project ("project administrator"). Defendants may elect to undertake a SEP project(s) by providing funds to a State or County entity, provided that the State or County agrees to expend the funds on the SEP agreed upon by Plaintiff and Defendants and agrees to meet the reporting requirements herein. Plaintiff must provide written approval of Defendants' project administrator(s) selection.

9. Defendants shall work with Plaintiff to reach an agreement regarding the proposed SEP, the selection of project administrator(s), and a timeline for commencing the SEP project(s) no later than 90 days from the Date of Entry of this Consent Decree.

10. All $125,000 shall be expended no later than two (2) years from the Date of Entry of this Consent Decree. All $125,000 shall be expended by the party or parties implementing the SEP project(s).

11. Defendants shall certify, as part of the SEP plan submitted to Plaintiff for any SEP that they are not otherwise required by law, and are unaware of any other person that is required by law, to perform the SEP project(s).

12. Within 180 days after entry of the approval of the SEP as provided in this Decree, and every six months thereafter until all SEP funds are expended, Defendants shall submit to

Plaintiff and this Court a report describing how the SEP project(s) were performed and completed during that period. The SEP status report shall, at a minimum, include the amount of SEP dollars spent, the party or parties responsible for carrying out the SEP project(s), the objective of the SEP project(s), the status of the SEP project(s), the expected environmental and public health benefits and energy reductions or benefits expected to result from the SEP project(s).

13. The party or parties carrying out the SEP project(s) must in writing: (a) identify its legal authority for accepting such funding; and (b) identify its legal authority and qualifications to conduct the project(s) for which Defendants contribute the funds. Defendants acknowledge that they will receive credit for the expenditure of SEP funds only if it is demonstrated that such expenditures met all requirements of this Consent Decree.

14. Within 60 days following the completion of each SEP project(s) required under this Consent Decree, Defendants shall submit to Plaintiff a report documenting the date that the project(s) was completed, the results of the SEP project(s), and the SEP dollars expended for the project(s).

15. If any testing of the LRP is conducted by the Defendants after July 1, 2014, the Defendants will pay an additional $125,000 toward a SEP project(s) or project, to be determined and agreed upon in accordance with paragraphs 6-14 above.

16. If by December 31, 2018, the Defendants have not secured an extension or additional long-term power supply contract of at least 3-years duration extending cold standby of the LRP from February 1, 2022 until February 1, 2025 or later, the Defendants will pay an

additional $125,000 toward a SEP project(s) or project, to be determined and agreed upon in accordance with paragraphs 6-14 above.

17. If at any time after entry of this Decree by the Court the Defendants abandon the LRP, payment under Paragraph 16 would not be required. For purposes of this Decree, the term "abandon" means that the Defendants demonstrate an intent to permanently cease operations of the facility through relinquishment of its permits, by a binding resolution, or by sale of the facility or its parts.

**Fees and Costs**

18. Within thirty (30) days from the Court's entry of this Decree, the Defendants will pay an agreed sum of $225,000 to University of Denver's Student Law Office to resolve Plaintiff's claim for fees and costs in Lamar I. Notice of the payment shall be provided to Plaintiff consistent with Paragraph 21 of this Decree.

19. Within thirty (30) days from the Court's entry of this Decree, the Defendants will pay an agreed sum of $100,000 to WildEarth Guardians to resolve Plaintiff's claim for fees and costs in Lamar II. Notice of the payment shall be provided to Plaintiff consistent with Paragraph 21 of this Decree.

20. Counsel for Plaintiff shall provide wire transfer instructions to counsel for Defendants at least twenty (20) days prior to the date payments are due under this Decree.

**General Provisions**

21. Any notifications under this Decree shall be directed to the individuals at the addresses specified below by United States Mail or Overnight Courier and e-mail, unless these individuals or their successors give notice of a change to the other Parties in writing.

As to Plaintiff:

Michael Harris
Environmental Law Clinic
2255 East Evans Ave.
Suite 335
Denver, CO 80201
mharris@law.du.edu

*and*

Jeremy Nichols
WildEarth Guardians
1536 Wynkoop St.
Suite 301
Denver, CO 80202
jnichols@wildearthguardians.org

As to Defendants:

Richard Rigel
General Manager
P.O. Box 70
3409 South Main
Lamar, CO 81052
rrigel@arpapower.org

*and*

Craig N. Johnson
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203
cjohnson@fwlaw.com

Houssin Hourieh
Lamar Light and Power
100 North Second Street
Lamar, CO 81052
hhourieh@lamarlp.com

22. The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Decree.

23. Pursuant to 42 U.S.C. § 7604(c)(3), this Decree shall be lodged with the Court and simultaneously provided to the United States Department of Justice and the United States Environmental Protection Agency (collectively, the "United States") for review and comment for a period not to exceed forty-five (45) days.

24. If the United States does not object or intervene within forty-five (45) days of receipt, the Parties shall submit a joint motion to the Court seeking entry of the Decree.

25. Entry of this Decree shall:

a. Cause dismissal, with prejudice, of Plaintiff's Complaints in the Actions.

b. Shall be deemed to resolve and effect a complete release of any and all claims or potential claims of Plaintiff related to fees or costs incurred in Lamar I and II, provided, however, that Plaintiff reserves the right to seek any fees or costs necessary to enforce this consent decree in the event of a breach by the Defendant.

c. Shall be deemed to resolve and effect a complete release of any and all claims or potential claims of Plaintiff related to the LRP, including but not limited to claims under the Clean Air Act and its implementing regulations, the Colorado State Implementation Plan, state and local air quality regulations, the LRP Construction Permit, or any other permit applicable to the LRP for alleged violations at LRP during anytime that the LRP is cold standby under this Consent Decree.

d. Shall be deemed to resolve and effect a complete release of Plaintiff's claims against CPDHE challenging the issuance of a 2012 permit to the LRP, as set forth in the Complaint in WildEarth Guardians v. Colorado Department of Public Health and Environment et al. (2012CV000046), for which Plaintiff agrees not to appeal the lower court's ruling.

26. Plaintiff has agreed that it shall not commence any legal action against the Defendants for any violation of state or federal laws or regulations that may occur for a period of one hundred twenty (120) days after the LRP resumes operation. This waiver of claims shall include, among other things, any exceedances of the permit for the LRP that may occur during the restart, testing and tuning of the facility for this 120-day period.

27. This Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree,

and supersedes all prior agreements and understandings among the Parties related to the subject matter herein. No document, representation, inducement, agreement, understanding, or promise constitutes any part of this Decree or the settlement it represents, nor shall they be used in construing the terms of this Decree.

28. Modifications to this Decree may be made only upon written agreement of the Parties that shall be filed with the Court.

29. Pursuant to 42 U.S.C. § 7604(c)(3), the United States shall be provided with the opportunity to review and comment upon any proposed modification to this Decree.

30. The Decree shall terminate automatically upon receipt of the payments required to be made by the Defendants, except that the Court shall retain jurisdiction to enforce the provisions of this Decree.

31. Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this document.

32. This Consent Decree may be signed in counterparts.

THE UNDERSIGNED PARTIES enter into this Decree and submit it to this Court for approval and entry.

Dated: 7/1, 2013

~~Jeremy Nichols~~ John C. Horning
WildEarth Guardians

Dated: 6/27, 2013

Houssin Hourieh
Lamar Utilities Board

Dated: 6/27, 2013

Richard Rigel
Arkansas River Power Authority

IT IS SO ORDERED.

Dated: _______________, 2013

_______________________________

United States District Judge